**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., L.L.P. D/B/A METHODIST HOSPITAL STONE OAK D/B/A METHODIST HOSPITAL; ORTHOPEDIC HOSPITAL, LTD. D/B/A TEXAS ORTHOPEDIC HOSPITAL; COLUMBIA MEDICAL CENTER OF PLANO SUBSIDIARY, L.P. D/B/A MEDICAL CITY PLANO; COLUMBIA MEDICAL CENTER OF MCKINNEY SUBSIDIARY, L.P. D/B/A MEDICAL CITY MCKINNEY; COLUMBIA MEDICAL CENTER OF DENTON SUBSIDIARY, L.P. D/B/A MEDICAL CITY DENTON; AND COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **Civil Action No. 3:25-cv-01615-E** |
| **COMMUNITY INSURANCE COMPANY D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD,** | § | |
| **Defendant.** | § | |

**<u>OPINION AND ORDER</u>**

Before the Court are Defendant's Motion to Dismiss (ECF No. 13), Plaintiffs' Response (ECF No. 16), and Defendant's Reply (ECF No. 19). After considering the briefing and relevant case law, the Court determines that Defendant's Motion to Dismiss should be **GRANTED in part**.

## I. BACKGROUND[1]

Plaintiffs are acute hospital systems in Texas. Defendant, Community Insurance Company D/B/A Anthem Blue Cross and Blue Shield ("Anthem"), is an insurance corporation based out of Ohio. Plaintiffs contract with non-party Blue Cross and Blue Shield of Texas "BCBSTX" under multiple agreements (the "Agreements"). The Agreements specify the terms under which Plaintiffs will treat patients with Blue Cross and Blue Shield health plans. The Agreements further specify the rates Plaintiffs will be paid for the treatment. Additionally, the Agreements cover treatment that Plaintiffs provide through the "BlueCard Program" ("BCP") to any Subscribers enrolled in any BCBS health plan, including Subscribers who are insured by another state's Blue Cross Blue Shield Association ("BCBSA") licensee. Anthem is the BCBSA licensee for the State of Ohio. Patients insured by Anthem received medical care from Plaintiffs. Anthem is bound by the Agreements in multiple ways: (a) by reason of its status as an "Affiliate" of BCBSTX; (b) as a "Payer" under the Agreements; and (c) by its participation in the BCP. A patient who carried BCBS health plans is a "Subscriber." Anthem represented Plaintiffs, Texas hospitals, as in-network hospitals on their website.

The BCP operates as follows when a Subscriber receives care out of state: The service area's BCBS plan under which the Subscriber is insured is referred to as the "Home Plan," and the local BCBS plan for the state in which the Subscriber receives care is referred to as the "Host Plan." When a Home Plan's Subscriber receives covered services in another state, the Home Plan must pay for the covered services provided to its Subscriber at the rates specified in the Host Plan's contract with the provider. For example, assume Anthem is the Home Plan for Subscribers. If a Subscriber receives treatment from a hospital in Texas, the hospital which provided the care will

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Complaint (ECF No. 1).

contact BCBSTX to receive reimbursement for the treatment provided to the Subscriber. BCBSTX will review the claim, determine the amount payable under the Agreement, and forward the claims to Anthem for adjudication. Finally, Anthem will make the final coverage determination and approve or deny payment for the services. In the present case, Anthem directly dealt with the hospitals instead of BCBSTX.

Plaintiffs bring claims on behalf of nine Subscribers. The nine Subscribers received treatment at different Texas hospitals (Plaintiffs) while insured by Anthem. The claims brought by Plaintiffs were assigned by the Subscribers who received treatment from Plaintiffs.

## II. LEGAL STANDARD

### A. Rule 12(b)(2) – Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of proof is on the plaintiff as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546.

"A federal district court sitting in diversity may exercise personal jurisdiction over a [nonresident] defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted). "Because Texas's long-arm statute reaches to the constitutional limits, the

question [a federal court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a nonresident defendant purposefully avails herself of the benefits of the forum state, so that she "'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction can be specific or general. *Clemens*, 615 F.3d at 378. "General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear,* 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 317). A corporation is at home in the place of incorporation and the principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide services of process, the relevant inquiry is whether the defendant has had minimum

contacts with the United States." *Busch v. Buchman, Buchman & O'Brian, Law Firm*, 11 F.3d. 1255, 1258 (5th Cir. 1994).

"Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (alteration in original) (internal quotation marks and citations omitted). Specific personal jurisdiction requires that a party "purposefully directed its activities at the forum state" and the Court has jurisdiction over claims "deriving from, or connected with" those activities. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

"A District Court may exercise pendant jurisdiction over a state law claim if the court already has jurisdiction over a 'substantial' federal claim, if the state and federal claims are derived from a 'common nucleus of operative fact,' and if the claims are such that a plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 141–142 (5th Cir. 1987) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

## III. ANALYSIS

Anthem argues Plaintiffs have not, and cannot, plead facts showing this Court has either general or specific jurisdiction over the State Law claims.[2] Therefore, the State Law Claims should be dismissed.[3] Plaintiffs respond this Court has specific jurisdiction and personal jurisdiction over the ERISA claim with pendant jurisdiction over the remaining State Law claims.[4] Anthem acknowledges this Court has nationwide personal jurisdiction for any ERISA-based claim, but

---

[2] Def.'s Mot. Dismiss 5, ECF No. 13.
[3] *Id.*
[4] Pls.' Resp. 8, ECF No. 16.

Plaintiffs' Complaint does not distinguish between the medical claims arising under a plan governed by ERISA and the medical claims arising from a plan exempt from ERISA, therefore Plaintiffs cannot meet the burden required for pendant jurisdiction.[5]

The Parties agree this Court has personal jurisdiction over Count IV - Failure to Comply with Health Benefit Plan in Violation of ERISA. The Parties disagree over whether the Court has specific jurisdiction of the State Law claims and whether the court has pendant jurisdiction over the State Law claims with Count IV - ERISA. These claims will be discussed in turn.

**A. Specific Jurisdiction**

Anthem argues this Court does not have specific jurisdiction over the State Law claims because Anthem's participation in the BCP is not a sufficient purposeful and directed activity.[6] Plaintiffs respond jurisdiction is based on Anthem's participation in the BCP and Anthem is bound to the Agreements as an affiliate of the Blue Cross Blue Shield Association which resulted in multiple benefits for Anthem.[7] This Court agrees with Plaintiffs.

Specific personal jurisdiction only requires a party to purposefully direct its activities at the forum state and for the litigation to arise out of those activities. *Sangha*, 882 F.3d at 101. Anthem argues Fifth Circuit case law precludes this Court from finding jurisdiction.[8] Specifically, Anthem cites *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010).[9] In *Kaisar*, the Fifth Circuit held the payments Kaiser (insurance company) made to Choice (Louisiana hospital system), and Kaiser's contract with Multiplan which allowed Kaiser to receive discounted coverage from participating health care providers were not sufficient contacts

---

[5] Def.'s Reply 3, ECF No. 19.
[6] Def.'s Mot. Dismiss 7, ECF No. 13.
[7] Pls.' Resp. 10, ECF No. 16.
[8] Def.'s Mot. Dismiss 7, ECF No. 13.
[9] *Id.;* Def.'s Reply 8, ECF No. 19.

to establish specific jurisdiction. *Id.* at 369. The Fifth Circuit considered no other contacts in their decision. *Id.* Additionally, Kaiser insured only accepted enrollment from insureds living in their service area which excluded Louisiana. *Id.* at 366. In *Perez,* the Fifth Circuit held Texas lacked specific jurisdiction over a Guatemalan insurance company where the only contacts consisted of advertising "worldwide" coverage and approving treatment in Texas. *Perez v. Pan Am. Life Ins. Co.*, 96 F.3d 1442 at *2 (5th Cir. 1996).

The district court cases cited by Anthem offer similar reasoning. In *St. Luke's Episcopal Hosp.*, the court held Texas had no jurisdiction after an insured from Blue Cross and Blue Shield of Louisiana received treatment at a Texas emergency room. *Louisiana Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125 at *4 (S.D. Tex. Jan. 6, 2009). The insurance company did not issue insurance policies to residents of the hospital's state in any of the above-mentioned cases. Anthem also cites *Lone Star 24 HR ER Facility, LLC*, which did involve an insurance company insuring residents of the hospital's state. *Blue Cross & Blue Shield of Texas*, No. SA-22-CV-01090-JKP, 2025 WL 1840733 at *4 (W.D. Tex. July 2, 2025). However, the Court did not address that fact when considering specific jurisdiction. *Id.* at *5–6. The state of law can be summed up as follows: Insurance companies do not subject themselves to specific jurisdiction by simply participating in a national insurance program such as the BCP that pays hospitals when their insured gets treatment at an out-of-state hospital.

Here, however, "Anthem insures and/or administers health plans that cover Texas residents."[10] Anthem also "issued and/or administered these health plans to/for Texas residents."[11] Anthem contends "[t]his distinction is unavailing."[12] The Court disagrees. Anthem insuring and

[10] Pls.' Comp. ¶ 8, ECF No. 1.
[11] *Id.*
[12] Def.'s Reply 7, ECF No. 19.

administering healthcare plans which cover Texas residents materially changes the factual situation from the situation described in *Kaiser* and *Perez.* In both *Kaiser* and *Perez*, the insurance company insured local residents who happened to receive treatment at an out-of-state hospital. 615 F.3d at 369; 96 F.3d 1442, 1996 WL 511748, at *1. In *Kaiser*, the insurance company had no part in picking which state the insured would receive treatment. *Kaiser*, 615 F.3d at 369–370. This shows a lack of purposeful availment on behalf of the insurance company.

As shown above, the current case is factually distinguishable from current fifth circuit precedent. Plaintiffs represented that Anthem intentionally sought to do business in Texas and with Texas residents.[13] The Texas residents also received medical services in Texas.[14] Additionally, Anthem listed Texas hospitals as "in-network" on its website demonstrating to potential onlookers that Anthem could provide coverage in the state of Texas.[15] Anthem purposefully directed activities in the following state by issuing and/or administering health plans to Texas residents.[16] "And with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, (1985) (quoting *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950)). When an insurance company takes on the continuing responsibility of insuring residents of another state, that state has specific jurisdiction over claims arising out of that contact.

[13] Pls.' Comp. ¶ 8, ECF No. 1.
[14] *Id.*
[15] Pls.' Comp. ¶ 20, ECF No. 1.
[16] Pls.' Comp. ¶ 8, ECF No. 1.

**B. Pendent Jurisdiction**

The Parties agree—and so does this Court—ERISA provides for national jurisdiction.[17] 29 U.S.C.A. § 1132 (e)(2); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 825 (5th Cir. 1996). However, the Parties disagree over the extent by which the surrounding claims arise from the same nucleus of common fact.

Plaintiffs argue that all the claims in the complaint should be heard under pendant jurisdiction because Plaintiffs provided medically necessary services to Anthem Subscribers and Anthem improperly denied coverage for such services.[18] Anthem argues that Plaintiffs' ERISA Claims and State Law Claims involving Subscribers whose health plans were insured or administered by the same insurer does not alone establish pendant jurisdiction.[19] The Court agrees with Anthem in part.

"The fact that the medical claims arising from plans governed by ERISA and the medical claims upon which Lone Star asserts a breach of contract all involve the same insurance provider does not establish a common nucleus of operative fact." *Lone Star*, No. SA-22-CV-01090-JKP, 2025 WL 1840733 at *6. Plaintiffs must show a greater commonality other than *all claims involve the same insurance provider* to establish the common nucleus of operative fact that is required to establish pendent jurisdiction. *Union City Barge Line, Inc.*, 823 F.2d at 141–142. The subject claims here involve four different hospitals brining claims on behalf of nine different Subscribers each with separate health plans.[20] While the lone common fact that all the Subscribers receive health insurance from Anthem is not enough to provide pendant jurisdiction, Plaintiffs may still be able to assert pendant jurisdiction for some claims. Plaintiffs can show a common nucleus of

[17] Def.'s Reply 2, ECF No. 19.
[18] Pls.' Resp. 9, ECF No. 16.
[19] Def.'s Reply 6, ECF No. 19.
[20] Pls.' Comp. ¶ 33–140, ECF No. 1.

operative facts by showing the exact Subscriber who assigned the ERISA claim. Any other claims assigned by the exact same Subscriber who assigned the ERISA claim would share a common nucleus of operative facts. The claims would all originate from the treatment of the same subscriber, at the same hospital, with the same treatment. The Court does not exercise pendant jurisdiction over Plaintiffs' claims from Subscribers who are not bringing ERISA claims. *Lone Star*, No. SA-22-CV-01090-JKP, 2025 WL 1840733 at *6. Plaintiffs bringing claims assigned by Subscribers who did not assign ERISA claims must be able to demonstrate specific jurisdiction to show jurisdiction.

**C. Specificity of Jurisdiction in the Complaint**

Anthem argues that Plaintiffs' Complaint is defective because the Complaint does not distinguish between the medical claims arising under a plan governed by ERISA and those medical claims arising from a plan exempt from ERISA.[21] Anthem is correct that this is an important pleading defect. The plaintiff bears the burden of establishing jurisdiction by prima facie evidence. *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020). The Complaint lists five different counts bought by four different plaintiffs who were assigned the claims by nine different Subscribers who all received treatment from one of the above Plaintiffs.[22] The Plaintiffs must establish jurisdiction for each count. This requires showing which Subscribers are eligible for ERISA and which Subscribers are Texas residents. "[i]f it appears that a more carefully drafted pleading might state a claim upon which relief can be granted, the court should give the claimant an opportunity to amend its claim rather than dismiss it." *Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, No. Civ.A. 303CV2392G, 2005 WL 2124126, at *7 (N.D. Tex. Sept. 1, 2005) (citing *Taylor v. Dallas Cty. Hosp. Dist.*, 976 F. Supp. 437, 438 (N.D. Tex. 1996)). The Court will grant leave to

[21] Def.'s Mot. Dismiss fn*3, ECF No. 13.
[22] *See* Pls.' Comp. ECF No. 1.

amend to allow the Plaintiffs an opportunity to clarify which claims fit within the jurisdictional limits described above.

## IV. CONCLUSION

The Court has explained two paths for the Plaintiffs to demonstrate jurisdiction. One, specific jurisdiction which is demonstrated when Anthem insured a Texas resident. Two, pendant jurisdiction for the individual Plaintiffs who brought claims in conjunction with ERISA. Before the Court is a Motion to Dismiss (ECF No. 13) filed by defendant Community Insurance Company ("Anthem"). For the reasons stated above, the Court agrees Plaintiffs' Complaint lacks specificity in demonstrating jurisdiction, and the Court determines Plaintiffs may replead their claims against Anthem to specify which path of jurisdiction applies for each claim.

Therefore, Anthem's motion is **GRANTED in part,** Plaintiffs shall have until **October 16, 2026,** to file an amended complaint curing the pleading defects.

**SO ORDERED** on this **1st day** of **October, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE